RCA CORPORATION

v.

LOCAL 241, INTERNATIONAL FEDER-ATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO,

Appeal of RCA CORPORATION,

Appeal of LOCAL 241, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO.

Nos. 82-5090, 82-5222, 82-5266 and 82-5317.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1982.

Decided March 1, 1983.

Rehearing and Rehearing En Banc Denied April 7, 1983.

Bernard G. Segal, John H. Leddy (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Ira Silverstein (argued), Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellee.

Before GIBBONS, HIGGINBOTHAM and BECKER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal arises from a final judgment and order of the United States District Court for the District of New Jersey. In the action below RCA Corporation ("RCA") sought a declaratory judgment that two unilateral decisions of the RCA Retirement Benefits Committee regarding RCA's Retirement Plan should not be subject to the arbitration provisions of its collective bargaining agreement or any other agreement between RCA and Local 241, International Federation of Professional & Technical Engineers ("Local 241"). RCA and Local 241 each filed a Motion for Summary Judgment.

The district court granted and denied both motions in part. The district court concluded that the disputes were arbitrable to the extent that the claims involved alleged violations of the General Collective Bargaining Agreement and Supplementary Agreements thereto which expressly provided for arbitration. The district court held that the claims were non-arbitrable to the extent that they involved violations of the Retirement Plan *alone* and on the merits of that issue granted summary judgment to RCA. In short, the court below found that the General Collective Bargaining Agreement and Supplementary Agreement, *not* the Retirement Plan, contemplated arbitration.

On January 12, 1982, RCA filed a timely Notice of Appeal limited to that portion of the district court's order requiring arbitration. The appeal was docketed in this Court as No. 82–5090. On January 20, 1982, RCA sent a letter to Local 241 notifying Local 241 that RCA had ordered a copy of the district court transcript for use in its appeal. Local 241 acknowledged RCA's letter on January 25, 1982. On February 16, 1982, three weeks after the 14-day deadline within which a notice of appeal must be filed as prescribed by Federal Rule of Appellate Procedure 4(a)(3), Local 241 motioned the district court for an extension of time in which to file a notice of cross-appeal from the district court's order relating to the non-arbitrability of the Retirement Plan.

Because of a misrepresentation by Local 241 alleging that it had not received notice of RCA's appeal until after the 14-day period had elapsed, and because of a mix-up in the Office of the Clerk of the District Court resulting in the non-delivery of RCA's Memorandum of Law in Opposition to Local 241's Motion, Local 241's motion was granted. Pursuant to this extension Local 241 filed a Notice of Appeal on March 16, 1982, which this Court designated as No. 82–5222.

On March 19, 1982, immediately after it learned of the extension granted to Local 241, RCA moved the district court to reconsider and vacate the March 8 order granting Local 241 an extension of time in which to file a notice of appeal.

Resting its decision on the unrebutted evidence that Local 241 was notified of RCA's notice of appeal prior to the January 26, 1982 deadline, the district court, in a Letter Opinion dated April 19, 1982, vacated its March 8 order granting Local 241 an extension. Additionally, the district court issued an order on May 3, 1982, giving effect to the April 19, 1982 Letter Opinion.

Local 241 appealed the May 3, 1982 order. That appeal was docketed in this Court as No. 82–5317, and on May 4, 1982, Local 241 filed another appeal, No. 82–5266, from the April 19, 1982 Letter Opinion.

We will affirm the district court's vacation of its March 8 order granting Local 241 an extension of time in which to file a Notice of Appeal and therefore we will dismiss Local 241's appeals, docketed in this Court as No. 82–5222, No. 82–5317 and No. 82–5266.

We will affirm also the district court's decision, in 82–5090, requiring RCA to arbitrate the unilateral actions of its Retirement Benefits Committee because Local 241 alleged that these unilateral actions violate Section 3.01 and 3.02 of the General Agree-

ment and 57.03 of the Supplementary Agreement.

## I. *FACTS*

The parties agree to the essential facts underlying this appeal. RCA and Local 241 are parties to a General Collective Bargaining Agreement, two Supplementary Agreements and a Retirement Plan. (App. 13a–129a). The General Collective Bargaining Agreement, expressly, and the Supplementary Agreement, by reference, provide for the arbitration of grievances arising under those agreements. The Retirement Plan, however, contains no provision for arbitration of grievances or disputes arising under that plan.

The disputes which Local 241 seeks to arbitrate involve two unilateral changes in the Retirement Plan. The first dispute stems from the fact that the Retirement Benefits Committee [1] unilaterally increased the interest rate assumption used in calculating the actuarial lump sum equivalences to extended monthly benefits paid under the Retirement Plan. By raising the interest rate "assumed" over the next X years, the present value and therefore dollar amount of lump-sum benefits paid today is decreased.

The second dispute concerns the "buy-back" interest rate applied to withdrawn contributions of previously terminated employees. RCA permits laid off or terminated employees to "buy-back" their pension credit if upon departing from RCA they had withdrawn their contributions. The buy-back price equals the withdrawn contributions compounded annually at a specified interest rate. Terminated employees who return as so-called new employees are charged five (5) percent while laid off employees are charged six (6) percent when recalled.

RCA has refused to recognize the arbitrability of Local 241's challenge to these unilateral actions of the Retirement Benefits Committee.

## II. *DISCUSSION*

The question before this Court is limited to the issue of arbitrability. Delimiting the role of this Court in this manner is well settled, and the question of arbitrability has often been framed as follows:

> Arbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he has not agreed so to submit. Whether or not a party to a contract is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, not by the arbitrator, on the basis of the contract entered into by the parties. *United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582 [80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409] (1962); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241 [82 S.Ct. 1318, 1320, 8 L.Ed.2d 1581] (1962); *John Wiley and Sons, Inc. v. Livingston, etc.,* 376 U.S. 543, 546–47 [84 S.Ct. 909, 912–13, 11 L.Ed.2d 898] (1964); *Retail Clerks International Ass'n, Etc. v. Lion Dry Goods,* 341 F.2d 715, 719–20 (6th Cir.1965).

(*Quoted in, Radio Corporation of America v. Association of Scientists and Professional Engineering Personnel,* 414 F.2d 893, 895 (3d Cir.1969)). Mindful of the narrow questions before us, we must determine whether RCA and Local 241 agreed to submit to arbitration disputes regarding the unilateral increase of the interest rate assumption used in calculating lump sum benefits. We must decide also whether the parties agreed to submit to arbitration disputes concerning the interest rate used to calculate the buy-back price of pension benefits where the interest rate distinguishes between those employees returning following a lay off and those employees returning following prior termination.

A. Appeals No. 82–5222, No. 82–5266 and No. 82–5317

In this part we first must determine whether the district court had the jurisdic-

---

1. RCA's Board of Directors makes annual appointments of the Retirement Benefits Committee. The Retirement Benefits Committee is responsible for administering the Retirement Plan.

tion to vacate its March 8 order granting Local 241 an extension of time in which to file a notice of appeal.

The central question which underlies these three appeals is whether the filing of a notice of appeal by a party divests a trial judge of jurisdiction.

In *United States v. Leppo,* 634 F.2d 101, 104 (3d Cir.1980), Judge Aldisert, writing for a unanimous court, explained:

> [O]rdinarily the trial court loses its power to proceed once a party files a notice of appeal. [Citations omitted]. This rule is not based on statutory provisions or the rules of procedure. Rather, it is a judge-made rule designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time. As Professor Moore has observed, *the rule "should not be employed to defeat its purpose or to induce needless paper shuffling."* 9 J. Moore, Federal Practice § 203.11 at 3–44 n. 1 (1980); *see* C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3949, at 358–59 (1977) (emphasis added.)

Local 241 failed to file a notice of appeal within the 14-day period but was granted an extension by the district court because Local 241 alleged that it had received no notice of RCA's appeal until the 14-day period had elapsed. The trial court also had believed, due to a mix-up in the Office of the Clerk of the District Court, that Local 241's motion was unopposed by RCA.

Upon learning of the district court's March 8 order granting Local 241 an extension of time, RCA moved the court to reconsider. In its motion, RCA offered unrebutted evidence that Local 241 had actual knowledge of RCA's Notice of Appeal prior to the running of the 14-day period. RCA also offered undisputed evidence that it had filed a timely Memorandum of Law in Opposition to Local 241's initial motion seeking

an extension of time. Based on the above reasons, the district court vacated its March 8 order which had granted Local 241 an extension of time in which to file a notice of appeal.

■ We agree with Judge Aldisert's reasoning in *Leppo,* 634 F.2d at 104, that the rule which requires a trial judge to divest himself of a case once a party has filed a notice of appeal "should not be employed to defeat its purpose or to induce unnecessary paper shuffling." *Id.*

■ In the instant case the trial judge vacated the March 8 order because he had relied upon misrepresentations by Local 241's counsel and because he erroneously believed Local 241's motion was unopposed. Because of the unusual nature of these circumstances, we hold that the trial court had the *jurisdiction* to vacate its March 8 order and thereby deny Local 241, retroactively, an extension of time in which to file a notice of appeal regarding the matter docketed at No. 82–5222.

■ Having ruled that the district court had jurisdiction, we next must determine whether the court acted properly in denying the extension of time for Local 241 to file its cross-appeal; we will not reverse the district court's decision unless we find that the court abused its discretion in so ruling, *see Pellegrino v. Marathon Bank,* 640 F.2d 696, 698 (5th Cir.1981). We cannot find on this record any such abuse of discretion. It appears that any delay in Local 241's receiving notice of RCA's appeal was due to coordination problems between the Philadelphia and Atlantic City offices of the union's own attorneys. Moreover, it is clear that Local 241 had more than a day to file notice of its cross-appeal even after receiving belated notice of RCA's appeal. We therefore dismiss the cross-appeal and affirm the rulings of the district court.[2]

**B.** Appeal No. 82–5090

---

2. By deciding that the district court had jurisdiction and the power to vacate its March 8 order, we automatically decide cases docketed as No. 82–5222, No. 82–5266 and No. 82–5317 against Local 241. These three are inextricably

tied because in 82–5266 and 82–5317 Local 241 asserts that the district court lacks the jurisdiction to vacate its March 8 order vacating the extension of time which was essential to the viability of 82–5222.

Next, we consider the case docketed by this Court as No. 5090. In deciding whether the two challenged unilateral actions of the Retirement Benefits Committee in that case are the subject of arbitration we must analyze the agreements on which the alleged right to arbitration is based. The agreements divide essentially into two categories.

One category consists of the relevant provisions of the General Agreement and Supplementary Agreement covering RCA employees at the Company's Moorestown, New Jersey plant, which provisions mirror those of the General Agreement and Supplementary Agreement covering RCA employees at the Company's Camden, New Jersey plant. (App. 13a–69a; App. 70a–129a, respectively). Because the relevant provisions in both sets of agreements are identical and because the district court treated and referred to them as one General Collective Bargaining Agreement (or "General Agreement") we will analyze these provisions as one collective bargaining agreement when possible. The other category contains a single agreement, the Retirement Plan, on which Local 241 at the trial court level and on appeal in No. 82–5222 had based its alleged right to arbitrate the challenged two unilateral actions of the Retirement Benefits Committee.

We begin our discussion with the General Collective Bargaining Agreement. It is undisputed that under the General Collective Bargaining Agreement Local 241 and RCA have agreed to arbitrate disputes with regard to the interpretation or application of any provision of the General Agreement. Thus, the initial question we must decide here is whether Local 241, as the party seeking arbitration, is making a claim which is governed by the General Collective Bargaining Agreement. Additionally and simultaneously we must determine whether the issues asserted by Local 241 are within the purview of the particular arbitration clauses. *See Bristol Farmers Market v. Arlen Realty,* 589 F.2d 1214, 1217–18 (3d Cir. 1978). We do not, however, decide the merits of the grievances. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 582, 80 S.Ct. at 1352.

It is irrelevant to this question that the two challenged provisions originated in the Retirement Plan. The right to arbitration stems from the actions of RCA's Retirement Benefits Committee in alleged contravention of provisions of the General Agreement. Whether the challenged actions were taken under the auspices of the Retirement Plan, another plan or no plan does not change our analysis. We are concerned only with actions that are alleged to violate particular provisions of a collective bargaining agreement which provides for arbitration of disputes concerning its interpretation or application.

The provisions of the General Collective Bargaining Agreement which Local 241 alleged were violated and whose application to the challenged unilateral actions the district court ordered RCA to arbitrate are Paragraphs 3.01 and 3.02 of the General Agreement and Paragraph 57.03 of the Supplementary Agreement. These provisions are set out in full as follows:

*General Agreement and Paragraph 57.03 of the local plant Supplementary Agreement.*

Paragraph 3.01, Bargaining Unit Recognition, states:

The Company recognizes the Union as the sole collective bargaining agency with respect to rates of pay, wages, hours and other conditions of employment for all employees in those bargaining units for which the Union and any affiliated chapter has been or shall be recognized through appropriate means satisfactory to both Parties as the sole collective bargaining agency. (App. 16a)

Paragraph 3.02, Provision Against Coercion, Intimidation, and Discrimination, states:

It is mutually agreed that there shall be no coercion, intimidation or discrimination by the Company or the Union or any of its members because of race, color, sex, national origin, political or religious belief, age, handicap, veter-

an's status or membership or non-membership in the Union. Coercion, intimidation or discrimination shall not exist where age is a bona fide occupational qualification or is a factor under the Company's established retirement policy as set forth in the RCA Retirement Plan. (App. 16a)

Paragraph 57.03, Joint Committee, states: There shall be a joint committee consisting of two (2) members appointed by the Company and two (2) members appointed by the Chapter,[3] which shall hold monthly meetings and shall be authorized to confer and make recommendations without respect to questions of fact relating to age, service, and eligibility under the Retirement Plan. (App. 51a)

In the instant case, Local 241 asserts that RCA's Retirement Benefits Committee's increasing of the interest rate assumption used in calculating the actuarial lump sum equivalencies to extended monthly benefits under the Retirement Plan violates Section 3.01 of the General Agreement and Section 57.03 of the Supplementary Agreement. Regarding Section 3.01, Local 241 asserts that RCA's failure to negotiate this change, which may adversely affect the lump sum benefits available to its members, violates Section 3.01 which recognizes the union as the exclusive bargaining agent for its members with respect to rates of pay, wages, hours and other conditions of employment. Regarding Section 57.03, which establishes a joint labor-management committee to make recommendations concerning the pension plan, Local 241 asserts that the employer's unilateral increase of the interest rate assumption circumvented the role of this joint labor-management committee in violation of Section 57.03.

Local 241 also alleges that the buy-back interest rate applied to withdrawn contributions of previously terminated employees violates Section 3.02 of the General Agreement. The purpose of Section 3.02 is to exclude "discrimination by the Company . . . because of . . . membership or non-membership in the union." (App. 16a). Local 241 asserts that the practice of charging a buy-back interest rate of six percent to laid off employees while charging terminated employees, who return as "new" employees only five percent violates Section 3.02 in that it discriminates against union members, i.e., those who have remained members of the union while they are in laid-off status, and favors non-union members, i.e., those who have dropped out of the union during the time they were terminated.

RCA answers that its increase of the interest assumption rate and increase of interest rate used to calculate the buy-back price could not be interpreted reasonably as violations of Paragraphs 3.01 and 3.02 of the General Agreement or Paragraph 57.03 of the Supplementary Agreement and therefore arbitration cannot be had.

■ The determination of the merits of this case rests within the province of the arbitrator. The arbitrator under the facts of this case would be limited in his authority and power. He could not decide the interest rate used in calculating the buy-back price, nor could he decide the appropriate actuarial assumptions for lump-sum benefits. The arbitrator simply has the authority and power to order that the unilateral changes regarding the appropriate buy-back interest rate and actuarial assumption "be revoked until such time as negotiations had taken place and reached impasse."[4] Local 241, during oral argument, indicated that if RCA and it reached an impasse following the arbitrator's order to bargain, RCA "would probably"[5] be free to adopt the disputed unilateral actions of the Retirement Benefits Committee. For the

---

**3.** "Chapter" is used to describe an affiliation of Union Local 241.

**4.** Transcript of Oral Argument at 34. Local 241 conceded this limited authority and power of the arbitrator. Local 241 also concluded that the arbitrator would not be within the scope of his authority or power to determine the buy-back interest rate or actuarial assumption. Id.

**5.** Id.

above reasons, we hold that arbitration is the proper method to decide the merits.

While we already have dismissed the cross-appeal challenging the district court's failure to find the Retirement Plan to be an independent basis supporting arbitration, it is useful nonetheless to discuss the cross-appeal with a view toward testing the validity of our other conclusion and completing the picture.

RCA contends that disputes concerning the interpretation or application of particular provisions of the Retirement Plan are non-arbitrable because the Retirement Plan and its amendment fail to provide mandatory arbitration provisions and because the Retirement Plan establishes the Retirement Benefits Committee as the body having exclusive power to settle disputes.

Local 241, however, contends that because RCA has entered into a collective bargaining agreement, which expressly provides for arbitration and mentions the Retirement Plan, and because the General Collective Bargaining Agreement recognizes the union as the sole bargaining agent with regard to wages and conditions of employment, the Retirement Plan is arbitrable.

■ The district court found, and we agree, that the Retirement Plan fails to provide an independent basis for mandatory arbitration. As the district court stated:

The retirement plan itself does not contain a provision for the arbitration of disputes or issues arising under it. Nor is the plan a jointly administered one, as such plans are established under section 302 of the Labor-Management Relations Act which contains specific requirements for the resolutions of disputes by arbitration. The retirement plan is administered exclusively by RCA, which is its sole fiduciary under section 402(a)(1) of ERISA.

(App. 301a)

. . . . .

The negotiations between plaintiff and its unions over changes in the retirement plan are conducted separately, [have] always been so, from negotiations concerning the general collective bargaining agreement. Proposals to amend the retirement plan are separately prepared and considered and the effective and termination dates [are different].

(*Id.* 302a.)

Moreover there is no provision in the General Agreement that either brings or seeks to bring the Retirement Plan within the ambit of the General Agreement. The mere mentioning of the Retirement Plan in the General Agreement is insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement.

The district court correctly found that the Retirement Plan was not adopted by the General Collective Bargaining Agreement as such. The district court focused on the following omissions:

The retirement plan agreements do not correspond to those of past or present collective bargaining agreements.... The retirement plan does not provide for the arbitration of disputes, as indicated earlier .... The retirement benefits committee has the power to "determine any questions arising in the administration, interpretation and application of the plan, which determination shall be conclusive and binding on all persons concerned."

Although the defendant local has made proposals to amend the plan as affects its membership and the parties have adopted amendments to the plan, no arbitration provision for the retirement plan was ever proposed or discussed.

(*Id.* 302a–03a).

Because the Retirement Plan fails to provide for arbitration either independently or when read in conjunction with the General Agreement, we find the part of the district court's opinion that held the provisions of the Retirement Plan non-arbitrable on an incorporation basis to be entirely consistent with that portion of the district court's order requiring arbitration based on the General Collective Bargaining Agreement.

## CONCLUSION

We are satisfied that Local 241's allegations satisfy the threshold requirement for arbitration under its General Collective Bargaining Agreement with RCA; thus we will affirm the judgment of the district court granting Local 241's Motion for Summary Judgment as to its claim under Paragraphs 3.01, 3.02 and 57.03 of the Collective Bargaining Agreement.

We will affirm also the district court's vacation of its March 8 order granting Local 241 an extension of time in which to file a Notice of Appeal and therefore we will dismiss the appeals, docketed in this Court as No. 82–5222, No. 82–5317 and No. 82–5266.