PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2349
_____

RONALD A. CUP, on behalf of himself and all other persons
similarly situated; UNITED STEEL PAPER AND
FORESTRY RUBBER MANUFACTURING ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION AFL CIO CLC

v.

AMPCO PITTSBURGH CORPORATION; AKERS
NATIONAL ROLL COMPANY;
AKERS NATIONAL ROLL COMPANY HEALTH &
WELFARE BENEFITS PLAN,

Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-00189)
District Judge: Honorable Arthur J. Schwab
_____

Argued May 1, 2018
Before: SMITH, *Chief Judge*, HARDIMAN, and
RESTREPO, *Circuit Judges*.

(Filed: August 29, 2018)

Pamina G. Ewing
Joel R. Hurt
Ruairi McDonnell
Feinstein Doyle Payne & Kravec
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
        *Attorneys for All Appellees*

Nathan L. Kilbert [Argued]
United Steelworkers of America
Five Gateway Center
60 Boulevard of Allies
Room 807
Pittsburgh, PA 15222
        *Attorney for Appellee United Steel Paper and Forestry*
        *Rubber Manufacturing Allied Industrial and Service*
        *Workers International Union AFL CIO CLC*

Jeremy P. Blumenfeld [Argued]
Brian T. Ortelere
Christen Casale
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Sean K. McMahan
Morgan Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Suite 800 North
Washington, DC 20004

Stephanie R. Reiss
Morgan Lewis & Bockius
301 Grant Street
One Oxford Centre, Suite 3200
Pittsburgh, PA 15219
        *Attorneys for Appellants*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This case involves a dispute over retiree healthcare benefits. Retired union member Ronald Cup and similarly situated retirees requested—and the District Court ordered—arbitration of the dispute under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Ampco Pittsburgh Corporation, its subsidiary Akers National Roll Company, and Akers' health and welfare benefit plan (collectively, the Company) filed this appeal, arguing that the District Court erred when it ordered arbitration. The appeal raises important questions of appellate jurisdiction and contract interpretation.

# I

## A

Akers operated a manufacturing facility in Avonmore, Pennsylvania. The Avonmore plant's employees were union members represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, formerly known as the United Steelworkers of America (USW). For many years Akers and the USW engaged in a negotiation process that culminated in a series of collective bargaining agreements, as well as memoranda of agreement addressing the details of various employment policies.

In 2016, Akers was acquired by Ampco and a dispute over healthcare benefits soon arose. At that time, former Avonmore plant employees who had retired but were still under the age of 65 (*i.e.*, not yet eligible for Medicare) paid $195 per month for their healthcare. But in July 2016, Ampco announced its intention to eliminate this healthcare plan for former Avonmore plant employees who had retired before March 1, 2015. The new plan would require retirees to purchase health insurance on the private market and then be reimbursed up to $500 per month for individuals or $700 per month for families. The affected retirees opposed this change because "the monetary value of the monthly reimbursement . . . is limited," "the reimbursement is only available for five years," and the retirees would have to "shop to purchase plans on the private market." App. 28. They also concluded that it violated a memorandum of agreement (MOA) dated February 26, 2015, which provided that while "[a]ll active employees [would] be transferred to the [Company's]

4

new health plan. . . . [c]urrent retirees will remain on their existing Plan ($195.00 monthly premium)." App. 95.

B

Shortly thereafter, the USW sought recourse under the collective bargaining agreement (CBA) in effect at the time. It filed a grievance under Section 6 of the CBA, which applies when "differences arise between the Company and the Union or its members as to interpretation or application of, or compliance with the [CBA's] provisions." App. 207–08. Ampco rejected the grievance on the ground that the Union no longer represented the retirees.

The USW and Ronald Cup, who retired from the Avonmore plant in 2014, sued the Company on behalf of Cup and other similarly-situated workers who retired before March 1, 2015. As amended, their complaint contains three counts: (I) a non-substantive claim compelling arbitration under § 301 of the LMRA, (II) a claim to enforce the CBA under § 301, and (III) in the alternative, a claim under § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). The USW and Cup (collectively referred to as the Union) brought Counts II and III "solely in the event that the Court determines that the Company is not obligated to arbitrate the retiree health dispute." App. 326.

The Company moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim. The Union responded by moving to compel arbitration, arguing that Section 6, which permits the Union to "appeal[] . . . to arbitration" an "unsatisfactory" Company grievance determination, App. 208, applied to the parties' dispute over the retiree-healthcare provision of the MOA as well as to the

5

CBA itself. The District Court agreed and granted the motion to compel in an order entered on June 13, 2017. Emphasizing the "strong federal policy in favor of resolving labor disputes through arbitration," it found that the CBA's "broad arbitration provision . . . does not expressly narrow or limit the types of disputes that the Parties intend to resolve through . . . arbitration." *Cup v. Ampco-Pittsburgh Corp.*, 2017 WL 2559624, at \*1–2 (W.D. Pa. June 13, 2017) (quoting *Rite Aid of Pa., Inc. v. United Food and Commercial Workers Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010)). Because the language of Section 6 was capacious enough to encompass the parties' dispute, the dispute was presumptively arbitrable.

Having ruled in the Union's favor on the arbitration count, the District Court did three other things in its June 13 order. First, it dismissed the two substantive counts without ruling on their merits. Second, with the dispute apparently headed for arbitration, it denied the Company's motion to dismiss as moot and announced its intention to order the parties to mediation before the more formal arbitration, as stipulated. Finally, the Court administratively closed the case. The Company timely appealed.

Meanwhile, the District Court took a number of administrative actions related to the June 13 order. In another order filed the next day, it referred the parties to mediation, which was unsuccessful. The District Court later denied the Company's motion to stay discovery while this appeal was pending, but this Court stayed enforcement of the arbitration order pending the outcome of this appeal.

6

II

The Company appeals the District Court's order granting the Union's motion to compel arbitration, asserting appellate jurisdiction under 28 U.S.C. § 1291 and the Federal Arbitration Act, 9 U.S.C. § 16(a)(3).[1] As always, we must determine whether we have jurisdiction to hear the Company's appeal, and our jurisdiction is not obvious in this case.

We have jurisdiction over "final decisions of the district courts." *See* 28 U.S.C. §§ 1291–92. Similarly, the Federal Arbitration Act provides for appeals of "final decision[s] with respect to an arbitration." 9 U.S.C. § 16(a)(3). Because finality is the key to jurisdiction under both of these statutes, we must determine whether the District Court's order compelling arbitration and administratively closing this case is final.

The Union claims the District Court's administrative closure does not mean that its order compelling arbitration was final and appealable. The Union is quite right on this point, as we made clear in *Penn West Associates, Inc. v. Cohen*, 371 F.3d 118, 127–28 (3d Cir. 2004). But the order under review here did more than close the case administratively; the District Court also ordered arbitration and dismissed all of the other claims without prejudice. These additional components implicate our decision in *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240 (3d Cir. 2013), where we held that an administrative closure was not an appealable final judgment where the district court had ordered arbitration while the

---

[1] The District Court had jurisdiction over this dispute under 28 U.S.C. § 1331.

7

plaintiff's employment discrimination claim was still pending. *Id.* at 247.

Unlike in *Freeman*, where the plaintiff's substantive claim remained pending despite the arbitration order, the District Court here granted the relief the Union sought in Count I (compelled arbitration) and dismissed its substantive claims in Counts II and III, "end[ing] the litigation on the merits and leav[ing] nothing more for the court to do but execute the judgment." *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (citations omitted). The District Court thus "disposed of the entire case . . . and left no part of it pending." *See id.* This is true even though the dismissal was without prejudice. Because there was "'nothing more for the court to do but execute the judgment,' the District Court's order falls within the Supreme Court's definition of an appealable final order." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002) (quoting *Green Tree*, 531 U.S. at 86) (order dismissing case without prejudice where all claims were arbitrable was final and immediately appealable).

Our conclusion that the District Court's order is final and appealable was presaged by our decision in *Penn West*, where we made clear that an administrative-closure order "was not a final, appealable order absent a separate document to signal the court's 'view that the case had concluded.'" 371 F.3d at 127–28 (quoting *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999)). In this case, the District Court's dismissal of both substantive counts is about as strong a "signal" as we can envision, and its order sending the parties to mediation does not call it into question. The parties had stipulated to the mediation earlier in the litigation, and their participation in it—no matter what the outcome—still "le[ft] nothing more for the [District C]ourt to do." *See Green Tree*,

8

531 U.S. at 86. As far as the District Court was concerned, the case was over.

For the reasons stated, we hold that the order compelling arbitration is final for purposes of 28 U.S.C. § 1291 and the Federal Arbitration Act.

## III

Having determined that we have jurisdiction to hear this appeal, we turn to the arbitration order itself. The parties agree that their dispute is arbitrable if it is properly characterized as a "difference[] . . . between the Company and the Union or its members as to interpretation or application of, or compliance with the provisions of [the CBA]." *See* App. 207–08 (CBA Section 6). But the Company argues that this dispute is not subject to arbitration under Section 6, because retiree health benefits are not covered by the CBA. We agree.

## A

Because CBAs must be interpreted "according to ordinary principles of contract law," *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015), we ascertain whether the CBA provides for retiree health benefits by studying its language. According to the Union, the key provision is found in Section 19, "Other Plans," which provides that the employees subject to the CBA are covered by various benefit "Plans," which include "Medical Insurance." App. 236.

The Union mischaracterizes Section 19 as "identif[ying] Company benefits plans enjoyed by both employees *and retirees*." Union Br. 15 (emphasis added).

9

Contrary to the quoted statement, the CBA states that it applies only to "employees"—a term defined elsewhere to include "production and maintenance employees at the Company's Avonmore plant *as of the date of this Agreement and thereafter*." App. 205 (emphasis added). So former employees like Cup, who retired before the CBA went into effect on March 1, 2015, are not "employees" under the CBA.

B

The Union's fallback position is that even if retirees are not among the "employees" to whom Section 19 expressly applies, Section 19 implicitly incorporates the MOA, which *does* discuss retiree health benefits. In relevant part, the MOA provides that while "[a]ll active employees wi[ll] be transferred to [a] new health plan . . . [c]urrent retirees will remain on their existing Plan ($195.00 monthly premium)." App. 95. The Union contends that this section is implicitly tied to Section 19, which refers to "Medical Insurance." *See* App. 236. Persuaded by this argument, the District Court concluded that the dispute was within the ambit of the CBA (and, by extension, Section 6's arbitration procedure) because the CBA "expressly includes 'Medical Insurance' as an included 'Other Plan.'" *Cup*, 2017 WL 2559624, at *2 (quoting CBA Sections 6 and 19). We cannot agree that the words "Medical Insurance" supply the missing link between the MOA and the CBA.

Even assuming Section 19's reference to "Medical Insurance" includes retiree health benefits as well as the "new health plan" for current employees, *see* App. 95, this single mention is insufficient to incorporate the MOA on the subject of retiree healthcare into the CBA. Our conclusion is consistent with *United Steelworkers of America v. Rohm & Haas Co.*, 522

F.3d 324 (3d Cir. 2008), which involved a challenge by a group of manufacturing workers and their union to a denial of disability benefits. *Id.* at 327, 334. The union in that case argued that a collective bargaining provision similar to Section 6 here mandated arbitration because "disability benefits are generally provided for under the . . . CBA," which contained one reference to a "Sickness and Accident plan." *Id.* at 334. We rejected this argument, as "the mere reference to the 'Sickness and Accident plan' without more d[id] not incorporate the entire Plan into the . . . CBA." *Id.* (citing *RCA Corp. v. Local 241, Int'l Fed'n of Prof'l and Tech. Eng'rs*, 700 F.2d 921, 927 (3d Cir. 1983)). Under those circumstances, the CBA was not so ambiguous as to be "reasonably interpreted to provide for disability benefits or to provide for arbitrating a plan administrator's denial of such benefits arising from a separate ERISA plan." *Id.*; *cf. Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665–66 (7th Cir. 2002) (no incorporation where one agreement "identifie[d]" another but "d[id] not incorporate its terms"). So too here.

The Union tries to distinguish *Rohm & Haas* on the ground that the disability plan in that case, unlike the healthcare plan at issue here, "contained its own dispute-resolution procedures." Union Br. 53. This, it contends, is "potent evidence" that the parties in *Rohm & Haas* "did not intend that disagreements arising under that plan be resolved by the CBA's arbitration procedure." *Id.* This argument is logical, but the existence of the healthcare plan's dispute-resolution procedures was not part of our analysis in *Rohm & Haas*.

Perhaps for that reason, the Union bases its argument not on *Rohm & Haas* but on our decision in *RCA Corp. v. Local 241, International Federation of Professional and Technical*

11

*Engineers*. Like the retiree health plan under discussion here, the retirement plan at issue in *RCA* "fail[ed] to provide an independent basis for mandatory arbitration." 700 F.2d at 927. But that does not help the Union's cause, because we *declined* to require arbitration of the dispute in *RCA*. *Id.* There, the CBA "expressly provide[d] for arbitration and mention[ed] the Retirement Plan" but contained "no provision . . . that either brings or seeks to bring the Retirement Plan within the ambit of the General Agreement." *Id.* For this reason, we concluded that "mere[ly] mentioning . . . the Retirement Plan in the General Agreement [wa]s insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement." *Id.*

The same is true of the CBA and MOA in this case. Despite the Union's arguments to the contrary, Section 19 of the CBA does not incorporate the MOA because "[m]ere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate, and there is no such expression here." *Rosenblum*, 299 F.3d at 666.

If anything, the CBA suggests an intent *not* to incorporate the MOA, as language expressly incorporating other agreements can be found elsewhere in the CBA. Section 9-E(6), for example, declares that "[t]he Absentee Control Program and the Tardy/Short Shift Programs . . . are incorporated in this contract as a [sic] separate memoranda." App. 214. This section makes clear that the parties to the CBA knew how to incorporate other agreements into the CBA, so it's telling that they chose not to use the same language in Section 19.

12

With the benefit of hindsight, the Union now tries to reverse-engineer the requisite intent to incorporate, arguing that "[o]ver the years, the parties [have] repeatedly used the CBA grievance and arbitration procedures to resolve their disputes about benefits identified in the CBA's 'Other Plans' section, including disputes regarding retiree benefits." Union Br. 9. But "extrinsic evidence of 'past practice' [may] be admitted, if at all, only to resolve an ambiguity in the CBA," *Quick v. NLRB*, 245 F.3d 231, 247–48 (3d Cir. 2001), and "should not be used to add terms to a contract that is plausibly complete without them," *U.A.W. Local 1697 v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir. 1999) (quoting *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (en banc)). We agree with the Company that the CBA does not present us with "either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term." *Id.* (alteration in original) (quoting *Bidlack*, 993 F.2d at 608). The parties chose not to include language incorporating the MOA, so we cannot incorporate it for them.

Our conclusion that the CBA does not incorporate the MOA has an additional consequence: the Union cannot invoke the presumption of arbitrability to salvage its position. Where the presumption applies, a court may not deny a motion to compel arbitration "unless it may be said with positive assurance that the [contract's] arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc.*, 458 F.3d 305, 311 (3d Cir. 2006) (presumption applies where arbitration clause "is clearly broad or ambiguous"). But this presupposes that the contract in

13

question contains an arbitration clause in the first place. *See AT&T Techs.*, 475 U.S. at 650. Here, the CBA indisputably has an arbitration clause in Section 6, but the *MOA*—the contract under which this dispute actually arises—does not. And where there is no arbitration clause, the presumption does not apply. *See id.*

Because the parties' dispute over retiree medical benefits is not subject to Section 6 of the CBA, it is not arbitrable. As the Company correctly points out, "there is no provision in the CBA regarding retiree medical benefits," and the MOA does not provide for arbitration. Company Br. 10. Nor did the CBA include retirees in its definition of "employees" or incorporate the MOA's provisions regarding retiree health benefits. The District Court therefore erred when it granted the Union's motion to compel arbitration. The Union may, of course, pursue its substantive claims in Counts II and III on remand.

\* \* \*

The collective bargaining agreement at issue in this appeal does not address retirees, whose health benefits are discussed in a memorandum of agreement that was never incorporated into the CBA. We cannot know whether this result was intentional or inadvertent, but we must enforce the contracts as written. Accordingly, we will reverse and remand.

14