# United States Court of Appeals
## For the First Circuit

No. 01-2430

THE PROVIDENCE JOURNAL COMPANY,

Plaintiff, Appellant,

v.

PROVIDENCE NEWSPAPER GUILD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Circuit Judge,
Gibson,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Lincoln D. Almond, with whom William P. Robinson III and Edwards & Angell, LLP were on brief, for appellant.
Barbara L. Camens, with whom Barr & Camens and Richard Humphrey were on brief, for appellee.

October 21, 2002

---

[*]   Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** This is an appeal from a district court order to arbitrate a post-expiration grievance that "arose under" the parties' expired collective bargaining agreement. For the reasons stated in this opinion, we affirm.

## I.

Plaintiff-appellant, Providence Journal Company (the "Journal"), publishes The Providence Journal and The Sunday Journal, newspapers of general circulation in the State of Rhode Island and surrounding areas. Defendant-appellee, Providence Newspaper Guild (the "Guild"), is the exclusive collective bargaining representative for certain Journal employees. The Journal and the Guild entered into several successive collective bargaining agreements, the last of which expired by its terms on December 31, 1999. The parties later extended that agreement (the "1994-1999 Contract") through January 31, 2000. Because there were no further extensions, both parties agree that the Contract expired after January 31, 2000.

Article V of the Contract generally creates a grievance arbitration procedure for the resolution of contractual disputes.[1] However, the Contract is silent as to whether the parties are

_____

[1] Article V reads, in relevant part: "In order that harmonious relations shall continue unbroken between the Parties, any dispute arising from the interpretation of this contract, disputes regarding discharges, discipline, wages and disputes concerning employment or operating conditions [shall be] subject to grievance arbitration."

obligated to submit disputes to arbitration after the expiration of the Contract.

After expiration of the Contract, in a letter dated February 8, 2000, the Journal notified the Guild that the dues checkoff, union security, and arbitration provisions of the Contract were no longer valid. The Guild filed a grievance with the Journal on February 11, 2000, eleven days after the expiration of the Contract, asserting violations of both Article II of the Contract and Memorandum of Agreement No. 8 ("MOA 8"), a side agreement incorporated into the Contract. Specifically, the grievance protested the Employer's unilateral termination of the parties' union security and dues checkoff procedures following the expiration of the Guild Contracts.

The union security clause, detailed in Article II, Section 5, required, as a condition of employment, that the Journal's employees covered by the Contract be Guild members "for the duration of this Agreement." By the terms of MOA 8, the parties negotiated an "evergreen clause" intended to ensure the uninterrupted effectiveness of the union security provision through the expiration of the next succeeding agreement. MOA 8 states in relevant part at paragraph 11:

> The provisions of Article II, Section 5 in the News and Advertising Agreements shall be continuously in force, to the extent permitted by law, from the date of this Agreement until expiration of the Collective Bargaining

Agreement which succeeds the current Collective Bargaining Agreement.

The Guild argued that the Journal's cancellation of union security during the current contractual hiatus was a violation of MOA 8.

The Guild further protested the Journal's unilateral termination of dues checkoff, asserting a violation of Article II, Section 4 of the Contract. Appellees argue that this provision, on its face, contemplated the continued effectiveness of dues checkoff following contract expiration because dues checkoff required revocation by the employee and not the employer. Specifically, Article II, Section 4 provides that this provision "shall remain in effect until revoked by the employee . . . but shall be irrevocable for a period of one (1) year from the date of the assignment, or until the termination of the collective bargaining agreement, whichever occurs sooner."

The Guild ultimately invoked arbitration by a letter dated March 9, 2000. The Journal refused to participate in the arbitration of the Guild's grievance and instead commenced suit in the District Court of Rhode Island to enjoin the American Arbitration Association from processing the matter. The District Court held a hearing on March 15, 2001, on the parties' cross-motions for summary judgment. The district court granted the Guild's motion for summary judgment and ordered the Journal to arbitrate the dispute in accordance with the Contract. The Journal filed this appeal.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court reviews the district court's entry of summary judgment de novo, re-examining the facts in the light most amiable to the unsuccessful party. See Fed. R. Civ. P. 56(c); Nat'l Tower LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 17 (1st Cir. 2002).

The expiration of a collective bargaining agreement does not necessarily extinguish a party's obligation to arbitrate grievances. In fact, a presumption favors arbitration in such circumstances. Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204 (1991) (finding a presumption in favor of post-expiration arbitration of matters and disputes arising out of the relation governed by the contract unless "negated expressly or by clear implication") (hereinafter Litton); Nolde Bros., Inc. v. Local No. 358, 430 U.S. 243, 255 (1977) (stating that "the parties' failure to exclude from arbitrability contract disputes arising after termination . . . affords a basis for concluding that they intended to arbitrate all grievances"). We believe that the district court correctly employed this presumption in the present case.

Much of the district court's decision rests on the precise language of the three provisions at issue here. The district court found that, on their face, MOA 8 and the dues

checkoff and union security provisions evidenced the parties' intent, and contractual obligation, to arbitrate all disputes. A literal reading of these provisions, according to the district court, confirms that the parties intended these benefits to continue after expiration. They, thus, "arose under the contract" and satisfy the Litton test for post-expiration arbitrability.[2] 501 U.S. at 205-06. After further examining both of these provisions, we too believe that they survive expiration of the collective bargaining agreement.

### A. Dues Checkoff

Because Article II, Section 4 clearly contemplates the continued effectiveness of the dues checkoff provision, it is properly subject to arbitration. While employers do not have a statutory obligation to continue such dues checkoff once collective bargaining agreements have expired, such obligations may be imposed by contract. Frito-Lay, Inc., 243 N.L.R.B. 137, 139 (1979). Here, Journal employees "voluntarily executed checkoff authorizations which expressly contemplated the possibility of periods when no

_____

[2] In Litton, the Court explained:

> A post-expiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

501 U.S. at 205-06 (emphasis added).

contract would be in effect." Id. This creates a contractual obligation. See Lowell Corrugated Container Corp., 177 N.L.R.B. 169, 173 (1969). Furthermore, "where, under normal principles of contract interpretation the disputed contractual right survives expiration of the remainder of the agreement," a post expiration grievance is arbitrable. Litton, 501 U.S. at 207-08. Consequently, the dues checkoff provision continues to be arbitrable.

### B. Union Security

While MOA 8's evergreen clause clearly provides that the union security provision remains in force until the subsequent contract expires, the parties dispute whether the original contract was the one which expired on January 31, 2000 or a prior contract. This dispute is central because it determines whether MOA 8 remains in force or expired on January 31, 2000. Both parties agree that they enacted MOA 8 during the 1994-1996 contract. However, the Journal argues that the 1994-1999 Contract was the "succeeding" agreement contemplated by MOA 8, and as such, the evergreen clause expired on January 31, 2000. The Guild, on the other hand, argues that the 1994-1999 Contract was a contract extension, rather than a distinct successor agreement. Under this argument, the evergreen clause does not come into effect until January 31, 2000, when it provides union security through the contractual hiatus and any

successor agreement.  Since the parties have yet to agree on a succeeding contract, it remains in effect.

Fortunately, the language of the 1994-1999 Contract resolves the issue.  The title page of the 1994-1999 Contract instructs that the parties' agreements are in effect from "January 1, 1994 through December 31, 1996 <u>as amended and extended</u> January 1, 1997 through December 31, 1999."  (Emphasis added.) Furthermore, the preamble of the 1994-1999 Contract further states:

> It is agreed that the Collective Bargaining Agreement dated April 25, 1995, and effective January 1, 1994 through December 31, 1996, is <u>extended</u> in all its terms and conditions, including Side Letters of Agreement, except as provided hereinafter, and this AGREEMENT is made a part hereof.

(Emphasis added.)  It is clear from this language that the parties intended to extend their existing agreement rather than create a new, succeeding, one.  As a result, MOA 8 continues to make the issue of union security arbitrable.

### III.

For the reasons outlined in the text of this opinion, the district court's grant of summary judgment is **affirmed.**  Costs are taxed against appellant.