10-2402-cv
Newspaper Guild v. Hearst

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Argued:  April 15, 2011        Decided: May 17, 2011)

————————————————————————————

NEWSPAPER GUILD/CWA OF ALBANY, TNG/CWA, AFL-CIO-CLC,

*Plaintiff-Appellee*,

—v.—

HEARST CORPORATION, DBA CAPITAL NEWSPAPER DIVISION,

*Defendant-Appellant*.

Docket No. 10-2402-cv

————————————————————————————

B e f o r e :  SACK, KATZMANN, LOHIER, *Circuit Judges*.

————————

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*), granting Plaintiff-Appellee's motion for summary judgment and denying Defendant-Appellant's cross-motion for summary judgment.  This appeal calls upon us to decide whether the district court erred in concluding that the parties' dispute over "checkoff" of union dues is subject to arbitration pursuant to their expired collective-bargaining agreement.  We hold that Plaintiff-Appellee's contractual right to checkoff of union dues survives expiration of the agreement, thus subjecting the parties' dispute to arbitration.  For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

————————

BARBARA L. CAMENS, Barr & Camens, Washington, D.C., *for Plaintiff-Appellee*.

MARK W. BATTEN, Proskauer Rose LLP, Boston, Mass., *for Defendant-Appellant*.

———————————

KATZMANN, *Circuit Judge*:

Defendant-Appellant Hearst Corporation ("Hearst") appeals from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*), entered on June 11, 2010, granting the motion of Plaintiff-Appellee Newspaper Guild ("the Guild") for summary judgment and denying Hearst's cross-motion for summary judgment. This appeal calls upon us to decide whether the district court erred in concluding that the parties' dispute over "checkoff" — or deduction and remittance — of union dues is subject to arbitration pursuant to their expired collective-bargaining agreement. As set forth below, we hold that the Guild's contractual right to checkoff of union dues survives expiration of the agreement, thus subjecting the parties' dispute to arbitration. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

## BACKGROUND

The facts of this case are not in dispute. The Guild is a labor organization that represents a bargaining unit of Hearst's employees. Hearst is a publisher of, among other things, the *Albany Times Union* and the *Sunday Times Union*, two newspapers of general circulation in Albany.

On December 1, 2005, the Guild and Hearst entered into a collective-bargaining agreement (the "CBA"), which, by its terms, was effective from August 1, 2004 to August 1,

2008. Section 10.E. of the CBA, which sets forth a procedure for resolving grievances between the parties, states in relevant part: "Any formal grievance involving the interpretation or application of this agreement may be submitted to final and binding arbitration." J.A. 67. Section 13, entitled "Dues Checkoff," provides:

> Upon an employee's voluntary written assignment, the Company [Hearst] shall deduct weekly from the salary account of such employee and pay to the Guild on the fifteenth (15th) day of each month, but in no event later than the twentieth (20th), all membership dues levied by the Guild for the current month. Such membership dues shall be deducted from the employee's salary in accordance with a schedule furnished the Company by the Guild on the first (1st) day of each month. . . . *An employee's voluntary written assignment shall remain effective in accordance with the terms of such assignments.* All such deductions shall be made in conformity with local, state or federal legislation.

> Such assignments shall be made upon the following form:

> To:  Capital Newspapers Division – The Hearst Corporation

> I hereby assign to the Newspaper Guild of Albany, NY from any salary earned or to be earned by me as your employee, an amount equal to all membership dues lawfully levied against me by the Guild for each calendar month following the date of this assignment as certified by the treasurer of the Newspaper Guild of Albany, NY.

> I hereby authorize and request you to check off and deduct such amounts during the month for which such dues are levied and the Guild so notifies you, from any salary then standing to my credit as your employee, and to remit the amount deducted to the Newspaper Guild of Albany, NY, not later than the twentieth (20th) day of that month.

> *This assignment and authorization shall remain in effect until revoked by me, but shall be irrevocable for a period of one (1) year from the date appearing below or until the termination of the collective bargaining agreement between yourself and the Guild whichever occurs sooner. I further agree and direct that this assignment and authorization shall be renewed automatically and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable collective agreement between yourself and the Guild, whichever period shall be shorter,* unless written notice of its revocation is given by me to yourself and to the Guild by registered mail not more than thirty (30) days and not less than fifteen (15) days prior to the expiration of each period of

one (1) year, or of each applicable collective bargaining agreement between yourself and the Guild, whichever occurs sooner. Such notice of revocation shall become effective for the calendar month following the calendar month in which you receive it.

This assignment and authorization supersedes all previous assignments and authorization heretofore given to you by me in relation to my Guild membership dues.
Employee's Signature _____
Date _____

J.A. 76-77 (emphasis added).

In 2008, the parties agreed to extend the terms of the CBA pursuant to an interim agreement dated June 15, 2008, which was subject to termination by either party upon thirty days' notice.

On March 10, 2009, Hearst notified the Guild by letter that it would terminate the CBA effective April 9, 2009 pursuant to the interim agreement's termination clause. Hearst's letter stated also that "[t]his shall include termination of the arbitration provisions in Section 10, and the dues checkoff provisions in Section 13." *Id.* at 149. On April 10, 2009, Hearst stopped "checking off," or deducting dues from employees' paychecks and remitting them to the Guild.

The following month, on May 2, 2009, the Guild filed with Hearst a formal grievance challenging Hearst's discontinuation of dues checkoff and seeking collection and remittance of all back dues with interest. The grievance stated that "[t]he cancellation of the dues checkoff violates Section 13, which compels the employer to remit dues checkoff in accordance with any unrevoked dues checkoff authorization." *Id.* at 151. The grievance, however, went unresolved. By letter dated May 14, 2009, the Guild stated its intention to invoke arbitration under the expired CBA. Hearst responded on May 27, 2009 that it would not agree to arbitrate the grievance.

On July 2, 2009, the Guild brought this action to compel arbitration against Hearst. The parties cross-moved for summary judgment as to whether their dues-checkoff dispute was subject to the CBA's arbitration clause and Hearst was required to continue collecting and remitting dues to the Guild after the CBA had expired.

In a memorandum decision dated June 11, 2010, the district court granted the Guild's motion for summary judgment and denied Hearst's cross-motion for summary judgment. *See Newspaper Guild/CWA of Albany v. Hearst Corp.*, No. 09-cv-764 (GLS/DRH), 2010 WL 2425909 (N.D.N.Y. June 11, 2010). The court identified the legal question as "whether the parties' intentions, as manifested in the language of the CBA, were for the dues checkoff obligation to survive the CBA's expiration." *Id.* at *4. It determined:

> [I]n light of the sweeping breadth of the arbitration clause, the nature of the dues checkoff clause, and Hearst's failure to identify a limitation on the continued viability of the dues checkoff entitlement, the court concludes that the CBA contemplates postexpiration arbitration of the issue of whether the Guild is entitled to continued collection and remittance of dues. Accordingly, . . . the CBA evidences an intent to arbitrate issues relating to dues checkoff obligations even after expiration of the CBA . . . .

*Id.* (footnote omitted). The court therefore ordered the parties to submit their dues-checkoff dispute to arbitration. *Id.* at *5.

This appeal followed.

**DISCUSSION**

On appeal, Hearst argues that the district court erred in concluding that the parties' dues-checkoff dispute is subject to arbitration pursuant to the CBA. It maintains that the CBA does not contemplate that Hearst's dues-checkoff obligation would survive the CBA's expiration and,

-5-

therefore, Hearst is not required to arbitrate this dispute. It argues also that Hearst has no statutory obligation to continue remitting union dues to the Guild. We review *de novo* the district court's determination that the dispute is arbitrable. *See Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*, 140 F.3d 459, 461 (2d Cir. 1998).

The duty to arbitrate "is a creature of the collective-bargaining agreement [such] that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 250-51 (1977). Nevertheless, the Supreme Court has stated that "[a]dherence to these principles . . . does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract." *Id.* at 251. In *Nolde*, the Court identified a presumption that "matters and disputes arising out of the relation governed by contract" are subject to arbitration even after the contract expires. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (discussing *Nolde*, 430 U.S. at 255). The Court further explained in *Litton* that "[a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 205-06.

As an initial matter, there is no dispute that the parties' dues-checkoff grievance does not involve "facts and occurrences" that arose before the CBA's expiration or an "accrued or vested" right under the CBA. *Id.* Hearst and the Guild likewise agree that Hearst's obligation to collect and remit union dues was governed by the CBA prior to its expiration. The fundamental

-6-

question therefore is whether, "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206; *see also CPR (USA) Inc. v. Spray*, 187 F.3d 245, 255 (2d Cir. 1999).

We begin with Hearst's argument that the CBA is ambiguous as to whether the Guild's right to checkoff of union dues survives the CBA's expiration and, therefore, the Guild has not borne its burden of proof. The CBA provides that "[a]ny formal grievance involving the interpretation or application of this agreement may be submitted to final and binding arbitration." J.A. 67. Section 13 of the CBA requires that "[u]pon an employee's voluntary written assignment," Hearst "shall deduct weekly" and "pay to the Guild" employee union-membership dues, *id.* at 76, and that "[a]n employee's voluntary written assignment *shall remain effective in accordance with the terms of such assignments*," *id.* (emphasis added). Section 13 also expressly sets forth the language of an employee's dues-checkoff assignment: "*This assignment and authorization shall remain in effect until revoked by me* . . . . I further agree and direct that *this assignment and authorization shall be renewed automatically and shall be irrevocable* for successive periods of one (1) year each for the period of each succeeding applicable collective bargaining agreement between yourself and the Guild . . . ." *Id.* at 76-77 (emphasis added).

Thus, by its terms, the CBA provides that Hearst "shall deduct" and remit to the Guild employee union dues upon an employee's written assignment. Such assignment remains effective according to the terms of the employee assignment form, which in turn provides that "this assignment and authorization" of dues-checkoff continues until revoked by the employee and is automatically renewed and irrevocable in certain circumstances. By the same token, the CBA does not provide Hearst the unilateral right to revoke any assignment. Nor is there any

indication that Hearst's obligation to remit dues to the Guild terminates upon expiration of the CBA. Accordingly, we hold, "under normal principles of contract interpretation," *Litton*, 501 U.S. at 206, that the Guild's right to checkoff of union dues survives expiration of the CBA.

Alternatively, Hearst contends that an employee's assignment of dues "do[es] not create a contractual obligation as between the employer and the union," Def. Br. 28, as indicated by *United Brotherhood of Carpenters & Joiners of America v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550 (6th Cir. 1991). In *United Brotherhood*, the Sixth Circuit stated that the employee assignment form at issue "is the employee's consent to the employer's role as agent for the union in the collection of dues. . . . It is not the source of the employer's duty to collect the dues and pay them to the union. That source is the collective bargaining agreement." *Id.* at 557. Here, by contrast, the dues assignment form set forth in section 13, which states that the assignment and authorization of dues may be revoked by the employee only, is an express provision of the CBA and thus is part of the agreement between Hearst and the Guild. *See* Def. Reply Br. 6 (conceding that the assignment "form appears in the agreement itself"). Hearst therefore is bound by its terms.

Notwithstanding the language of the CBA, Hearst argues that under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, an employer is not required to continue collecting and remitting union dues after its collective-bargaining agreement expires. The National Labor Relations Board ("NLRB"), however, has held that such a requirement may be imposed by contract. *See Frito Lay, Inc.*, 243 NLRB 137, 139 (1979) (observing that dues-checkoff dispute "was one involving contract interpretation rather than one involving an interpretation and application of the [NLRA]" (internal quotation marks omitted)); *see also id.*

-8-

("The employees voluntarily executed checkoff authorizations which *expressly* contemplated the possibility of periods when no contract would be in effect. . . . Since the employees did not revoke their authorizations . . . , the Union and the Employer were justified in considering the authorizations still valid."). As Hearst concedes, "[p]arties certainly may lawfully agree to continue checkoff; the question is whether these parties did." Def. Reply Br. 8. Therefore, the CBA, not the NLRA, governs Hearst's dues-checkoff obligation. Insofar as Hearst asserts that the NLRA "provides extrinsic evidence of the parties intent," Def. Reply Br. 8, we conclude that the CBA is unambiguous and, thus, reliance upon extrinsic evidence is inappropriate. *See, e.g.*, *Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005) ("[I]f a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." (alteration in original) (internal quotation marks omitted)).

Relying upon *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983), Hearst rejoins that the Guild must prove that Hearst "clear[ly] and unmistakabl[y]" agreed "to stop withholding dues from employees' wages." Def. Br. 21. *Metropolitan Edison*, however, addresses whether a union waived certain of its officers' rights protected by the NLRA. 460 U.S. at 707-08. Because Hearst's statutory rights and obligations under the NLRA are not at issue in this case, *see Frito-Lay*, 243 NLRB at 139, the requirements for waiver of a statutorily protected right are inapplicable. Accordingly, Hearst's reliance upon *Metropolitan Edison* is misplaced.

Finally, we note that the conclusion we reach today is entirely consistent with the First Circuit's decision in *Providence Journal Co. v. Providence Newspaper Guild*, 308 F.3d 129 (1st Cir. 2002). There, as here, an expired collective-bargaining agreement between a labor union and a newspaper publisher contained a broad arbitration clause and a dues-checkoff provision, which required the publisher to deduct union dues from employees' wages and remit them to the union upon employees' written authorization. The dues-checkoff provision stated in pertinent part:

> Such [dues] assignment and authorization, to be made on a form agreed upon by the Parties, shall remain in effect until revoked by the employee or irregular extra, but shall be irrevocable for a period of one (1) year from the date of the assignment, or until the termination of the Collective Bargaining Agreement, whichever occurs sooner.

J.A. 182. After the agreement had expired, the union sought to compel arbitration against the publisher of its claim for continued remittance of union dues on the ground that the dues-checkoff provision, "on its face, contemplated the continued effectiveness of dues checkoff following contract expiration because dues checkoff required revocation by the employee and not the employer." 308 F.3d at 131. The First Circuit, applying *Litton*, observed that the publisher's "employees voluntarily executed checkoff authorizations which expressly contemplated the possibility of periods when no contract would be in effect." *Id.* at 132 (internal quotation marks omitted). It concluded that "[b]ecause [the agreement] clearly contemplates the continued effectiveness of the dues checkoff [obligation], it is properly subject to arbitration." *Id.* Consequently, the First Circuit affirmed the district court's grant of summary judgment in favor of the union and its order directing the parties to arbitration.

-10-

Hearst maintains that "while the dues checkoff provision in *Providence Journal* did contain similar language to the one at issue here, that provision did not exist on its own, but was instead linked to a robust union security clause which itself evidenced an unmistakable intention by the parties to have the provisions survive expiration of the collective bargaining agreement." Def. Br. 30. Although the First Circuit held, in a separate section of its opinion, that a grievance arising under the agreement's union-security clause also was arbitrable, it found the parties' dues-checkoff dispute to be arbitrable based solely upon the language of the dues-checkoff provision. *See Providence Journal*, 308 F.3d at 132. Hearst's attempt to distinguish *Providence Journal* on this ground is therefore unavailing. Accordingly, the First Circuit's reasoning supports our conclusion that the dues-checkoff dispute between Hearst and the Guild is subject to arbitration.[1]

**CONCLUSION**

In summary, we hold that the Guild's contractual right to checkoff of union dues survives expiration of the CBA, thus subjecting the parties' dues-checkoff dispute to arbitration. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[1] We express no view on the merits of the Guild's dues-checkoff grievance. We decide only that the parties' dispute is arbitrable pursuant to the expired CBA. *See Nolde*, 430 U.S. at 249 ("Of course, in determining the arbitrability of the dispute, the merits of the underlying claim . . . are not before us.").