21-2565-cv
Local Union 97 v. NRG Energy, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: April 27, 2022                    Decided:  November 10, 2022)

Docket No. 21-2565-cv

_____

LOCAL UNION 97, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS,
AFL-CIO,

*Plaintiff-Appellant*,

v.

NRG ENERGY, INC.,

*Defendant-Appellee*.

_____

Before: POOLER, PÉREZ, *Circuit Judges*, and RAKOFF,[1] *District Judge*.

---

[1] Judge Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation.

Appeal from United States District Court for the Northern District of New York (Gary L. Sharpe, *J.*) dismissing Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO's ("Local Union 97") complaint against NRG Energy, Inc. Local Union 97 brought a complaint compelling arbitration based on a dispute between NRG and Local Union 97 over retiree benefits. Because the presumption of arbitrability applies to the parties' collective bargaining agreement, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

_____

KENNETH L. WAGNER, Blitman & King LLP, Syracuse, NY, *for Plaintiff-Appellant*.

JOSEPH M. MCGUIRE, Shawe Rosenthal LLP, Baltimore, MD, *for Defendant-Appellee.*

POOLER, *Circuit Judge*:

In 2003, NRG Energy, Inc., a leading energy company in the United States, and Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO ("Local Union 97"), a union primarily of electrical workers, executed a memorandum of agreement ("2003 MOA") detailing a two-pronged approach to

2

providing retiree life insurance benefits. First, under the 2003 MOA, employees hired before 2003 would be grandfathered into the existing retiree life insurance benefit, and second, employees hired after 2003 would receive no retiree life insurance benefit. The 2003-2007 collective bargaining agreement ("2003-2007 CBA") between NRG and Local Union 97 included the second prong, but not the first. The parties engaged in four subsequent CBAs covering the years 2007 through 2019 that all contained identical language regarding the life insurance benefit.

However, in the 2019-2023 CBA, the retiree life insurance benefit was amended to provide: "Effective November 1, 2019, the retiree life insurance benefit for employees hired prior to [2003] will be a lump sum of $10,000." App'x at 49. Local Union 97 understood this to mean that all employees hired prior to 2003 but retiring after 2019 would only receive a $10,000 retiree life insurance benefit, while retirees who had retired prior to November 1, 2019 when the new CBA went into effect ("Pre-2019 Retirees")[2] would continue to be grandfathered

---

[2] The district court termed the affected retirees the "Pre-2019 Retirees." The grievance includes former employees who retired in 2019 before the November 1, 2019 adoption of the new CBA, but for consistency, this opinion adopts the district court's nomenclature.

3

into the existing retiree life insurance benefit. To the union and the retirees' surprise, NRG notified Pre-2019 Retirees that their life insurance benefit would be changed to a lump sum of $10,000.

Local Union 97 then brought a complaint seeking to compel arbitration of a grievance they submitted alleging that NRG violated the terms of the CBAs by changing the life insurance benefit for the Pre-2019 Retirees to a lump sum of $10,000. The district court held that: 1) the grievance is not arbitrable under the 2019-2023 CBA, 2) the 2003 MOA is not arbitrable, and 3) the grievance is not arbitrable under any of the CBAs covering 2003-2019. *See Local Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 561 F. Supp. 3d 322 (N.D.N.Y. 2021).

We disagree with the district court and hold that the grievance is arbitrable under the 2019-2023 CBA because the broad arbitration provision creates a presumption in favor of arbitrability that NRG failed to overcome. This conclusion alone ends the analysis and requires reversal of the district court. However, we also hold that the parties' dispute was arbitrable under the Prior CBAs because the 2003 MOA was a supplemental agreement which arguably vested the life insurance benefit for life.

4

## BACKGROUND

**I.      Factual Background**

Local Union 97 is the collective bargaining agent for approximately thirty-five NRG employees who work at NRG's electric stations in New York. *Id.* at 325. Since 1999, the parties have operated through consecutive CBAs covering these employees. In 2003, while negotiating a new CBA, Local Union 97 and NRG agreed to various retiree benefits for current and future employees, which they set forth in a memorandum of agreement. The 2003 MOA states that "[c]urrent employees will be grand fathered as to their participation in life insurance Plan A or Plan B at retirement," and "[e]mployees hired after September 30, 2003 will not be provided with a life insurance benefit upon retirement." App'x at 83.

In 2003, the parties entered into the 2003-2007 CBA which stated that employees hired after 2003 would not be provided with a life insurance benefit upon retirement (the "Life Insurance Provision"). Local Union 97 and NRG executed four more CBAs from 2007 to 2019 all containing the same Life Insurance Provision. In the current 2019-2023 CBA, the Life Insurance Provision was amended and now states: "Effective November 1, 2019 the retiree life insurance benefit for employees hired prior to September 30, 2003, will be a lump

sum of $10,000." App'x at 49. This provision applies to NRG employees employed under the 2019-2023 CBA who were hired prior to 2003 and retired after 2019. It does *not* apply to retirees who were hired prior to 2003 and retired *before* 2019—that is, the Pre-2019 Retirees. However, NRG notified the Pre-2019 Retirees that their life insurance benefits would also be changed to a lump sum of $10,000. Because of that, a dispute arose between Local Union 97 and NRG regarding retiree life insurance benefits.

The 2019-2023 CBA includes the following arbitration clause:

> Should [Local Union 97] claim that a dispute or difference has arisen between [NRG] and [Local Union 97] as to the meaning, application or operation of any provision of this agreement, such dispute or difference shall be presented within thirty (30) working days and settled in the following manner, and there shall be no quitting or suspension of work during or on account of such dispute or difference.

App'x at 52.

On October 22, 2020, Local Union 97 submitted a grievance on behalf of the Pre-2019 Retirees, alleging that NRG's action violated the portions of the CBA relating to life insurance. On October 28, 2020, NRG Labor Relations Director Rich North emailed a letter to the union stating that retirees are not "employees" of NRG, are not covered by the 2019-2023 CBA with Local Union 97, and that

6

NRG was not required to recognize Local Union 97 as representative of the retirees. Subsequently, Local Union 97 obtained written authorization from 113 retirees to represent them "'in any arbitration or other legal proceeding' necessary to secure their contractually guaranteed life insurance benefits." App'x at 12. Local Union 97 filed a complaint on November 5, 2020 in district court seeking to compel arbitration.

**II. Procedural Background**

NRG sought dismissal of the complaint on grounds that: 1) arbitration cannot be compelled under the 2019-2023 CBA, 2) the presumption of arbitrability does not apply, 3) the 2003 MOA is not incorporated by reference into any of the CBAs between the parties, and 4) arbitration cannot be compelled under the prior CBAs.

The district court agreed with NRG and dismissed the complaint. *See Local Union 97*, 561 F. Supp. 3d at 327. The district court held that the Pre-2019 Retirees cannot compel arbitration under the 2019-2023 CBA because the 2019-2023 CBA Life Insurance Provision only concerns the retirement benefits of current employees, not retirees.

7

The district court also held that Local Union 97 is not entitled to the presumption of arbitrability in the present dispute because the 2019-2023 CBA does not affect the Pre-2019 Retirees' life insurance benefits and neither party cites the 2019-2023 CBA as the basis for converting the Pre-2019 Retirees' life insurance benefits to a lump sum. *Id.* at 328-29.

The district court agreed with NRG that the 2003 MOA is not incorporated into any of the CBAs between the parties, and thus, disputes arising out of the 2003 MOA are not subject to arbitration under the CBA's arbitration clauses. Lastly, the district court held that the life insurance benefits may not be arbitrated under any of the prior CBAs. *Id.* at 333.

Local Union 97 appealed the district court's decision.

## DISCUSSION

"We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). Specifically, whether a district court "correctly determined that [a] dispute is arbitrable is a matter we review *de novo*." *Coca-Cola*

8

*Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union, Local 812*, 39 F.3d 408, 410 (2d Cir. 1994).

**I.** **Legal Framework**

**A.** **Arbitrability**

Because "a collective bargaining agreement is not an ordinary contract," *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550 (1964), doubts about the scope of an arbitration clause in a CBA "should be resolved in favor of coverage," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). This Court has provided a "roadmap for determining whether particular disputes fall within the scope of an arbitration agreement." *Trs. of Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. FDR Servs. Corp. of N.Y.*, No. 17-cv-7145, 2019 WL 4081899, at *2 (S.D.N.Y. Aug. 28, 2019). First, the court "should classify the particular clause as either broad or narrow." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). But "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be

9

ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted).

When a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and alterations omitted). "This presumption is particularly applicable where . . . the arbitration clause is broad. Therefore, in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration will suffice." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Local 4-5025 v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 102 (2d Cir. 2009) (internal quotation marks, alterations, and citations omitted).

"Under a broad arbitration clause, a dispute arising under the contract is arbitrable 'whether "arguable" or not, indeed even if it appears to the court to be frivolous.'" *Coca-Cola*, 39 F.3d at 410 (quoting *AT&T Techs., Inc.*, 475 U.S. at 649-50). In *Coca-Cola*, the Soft Drink and Brewery Workers Union alleged that Coca-

10

Cola violated its contract with the union by not providing route-salesman with sufficient product to allow them to earn compensation in the form of commissions and incentive bonuses. *Id.* at 409. The CBA between the parties contained a broad arbitration clause, covering "all disputes" between the union and Coca-Cola. *Id.* Coca-Cola argued that nothing in the CBA gave the union a right to insist that the company assure any particular volume of product, or a volume of product sufficient to enable the employees to earn extra compensation. *Id.* at 410. We held that, under a broad arbitration clause, even claims that appear "frivolous" are subject to arbitration. *Id.* at 410-11. Recognizing that the union "press[ed] this principle to its limit" by arguing that because Coca-Cola "agreed to a compensation provision that relates commissions and bonuses to volume of product, the [u]nion may obtain arbitration of any dispute it might have with the [c]ompany that affects the level of product volume," we still ordered arbitration because a grievance can be regarded as non-arbitrable only if "it can be seen in advance that no award to the [union] could receive judicial sanction." *Id.* at 411 (quoting *John Wiley & Sons, Inc.*, 376 U.S. at 555); *accord Emery Air Freight Corp., Local Union 295*, 786 F.2d 93,

11

99 (2d Cir. 1986) (characterizing *John Wiley & Sons*' requirement as calling for only a "barely colorable" claim).

Our sister circuits hold that the presumption of arbitrability applies to contractual disputes over retirees' benefits "if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*, *Local* 270, 440 F.3d 809, 815-16 (6th Cir. 2006) (rejecting the argument that retirees are not part of the collective bargaining unit and that the grievance procedures do not apply to them); *see also United Steelworkers of Am., AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 82 (3d Cir. 1978) ("[A]rbitration of this dispute may be compelled . . . regarding the payment of premiums for medical and health insurance coverage of retired employees."); *cf. Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1296 (8th Cir. 1985) (noting that a union would have standing to represent retirees' rights under a CBA if it chose to do so, and an employer could not refuse to arbitrate its contractual obligations with the union).

12

**B. Collateral Agreement**

In order to determine whether a side agreement lacking its own arbitration clause is arbitrable under the main agreement, a court should first classify the arbitration clause as either broad or narrow. *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224. Where the arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted). Generally, "[w]hether such a side agreement was made, what it specified, whether it was breached, and whether, under the circumstances of [the] case, breach of such a side agreement gives rise to a remedy . . . are all matters for the arbitrators." *Coca-Cola*, 39 F.3d at 411. The party resisting arbitration bears the burden of showing the collateral matter is not arbitrable. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).

**C. Arbitration Under Prior Agreements**

"It is the general rule that an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 179 (2d Cir. 2019) (internal

13

quotation marks and alterations omitted). The employer may, however, "contract[] to vest employee welfare benefits." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996). "[I]f an employer promises vested benefits, that promise will be enforced." *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997).

A grievance that arises after the applicable contract expires can be said to arise under that contract, but only "where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Newspaper Guild/CWA of Albany v. Hearst Corp.*, 645 F.3d 527, 530 (2d Cir. 2011).

The Supreme Court first considered whether a party to a CBA containing an arbitration clause may be required to arbitrate a contractual dispute under that CBA even though the dispute arose after termination of the CBA in *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 244 (1977). In *Nolde*, a union brought a complaint seeking to compel Nolde Brothers, Inc. ("Nolde") to arbitrate a severance pay issue. 430 U.S. at 247. Nolde argued

14

that the employees' right to severance pay expired when the CBA between the parties was terminated. *Id.* The Supreme Court disagreed, holding that "matters and disputes arising out of the relation governed by contract" are subject to the presumption in favor of arbitration even after the contract expires. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (discussing *Nolde*, 430 U.S. at 255). The Supreme Court stated: "[i]n short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde*, 430 U.S. at 255.

Then, in *Litton*, the Supreme Court addressed the arbitrability of a post-expiration grievance involving seniority rights in the context of a layoff. 501 U.S. at 209. The Court distinguished *Nolde* on the grounds that the layoff provision was unlike the severance pay at issue in *Nolde* because severance pay constituted a form of deferred compensation that created a right that vested or accrued during the term of the agreement. *Id.* at 210.

In *Newspaper Guild*, this Court, applying the *Nolde/Litton* framework, addressed the arbitrability of a dispute over the defendant's contractual obligation to pay dues to the union following expiration of the parties' contract. 645 F.3d at 527-28. There, we considered "whether, under normal principles of

15

contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 530 (internal quotation marks omitted). We held that the union's right to dues survives the expiration of the CBA because the obligation remained "until revoked by the employee" and, indeed, was "irrevocable in certain circumstances." *Id.* at 531. We also noted that we did not express a view as to the merits of the union's grievance, only that there was a sufficient basis to render the grievance arbitrable pursuant to the expired CBA. *Id.* at 533 n.1.

## II. Application

### A. The Parties' Dispute Is Arbitrable Under the 2019-2023 CBA

The district court correctly concluded that the arbitration clause in the 2019-2023 CBA is "broad." *Local Union 97*, 561 F. Supp. 3d at 329. However, the district court erred in holding that "the presumption of arbitrability does not apply here." *Id.* We hold that disputes between unions and employers regarding retiree benefits are subject to arbitration where the collective bargaining agreement includes a broad arbitration clause and terms regarding retiree life benefits.

First, a presumption of arbitrability applies. The parties do not dispute that the arbitration clause is broad. *See* Appellant's Br. at 25; Appellee's Br. at 23-24 ("NRG does not dispute that the 2019-2023 CBA is 'broad.'"). But NRG relies on *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58 (3d Cir. 2018) to argue that the presumption does not apply. In *Cup*, the Third Circuit determined that a contractual dispute regarding healthcare plans for retirees was not subject to arbitration. *Id.* at 63-65. The court in *Cup*, however, did not even decide whether the arbitration clause in the CBA at issue was "broad" or "narrow," and therefore did not consider, as an initial matter, whether the presumption in favor of arbitration applied before analyzing the CBA. *See Cup*, 903 F.3d at 62-63. Because we undertake a wholly different analysis here—in which we hold that the arbitration clause at issue is broad and that a presumption in favor of arbitration thus applies—the Third Circuit's decision in *Cup* is not relevant to the claims before us.

Second, NRG fails to overcome the presumption of arbitrability. *Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Bhd. of Teamsters*, 809 F.2d 963, 970 (2d Cir. 1987). The presumption should only be rejected if the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute," *AT&T*

17

*Techs., Inc.*, 475 U.S. at 650, to which "only the most forceful evidence of a purpose to exclude the claim from arbitration will suffice." *United Steel*, 565 F.3d at 102 (internal quotation marks omitted).

There is no such evidence in this case. Here, the arbitration clause states that, "[s]hould [Local Union 97] claim that a dispute or difference has arisen between [NRG] and [Local Union 97] as to the meaning, application or operation of any provision of this agreement," then Local Union 97 may file a grievance. App'x 52-53. If the grievance is not answered in an appropriate manner, Local Union 97 may give notice of its intent to refer the dispute to arbitration. This is a classic example of a broad clause. In fact, in a decision rendered prior to the district court decision in this case, a different district court judge in the Northern District of New York held that an identical arbitration clause involving Local Union 97 was "particularly broad." *Local Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, No. 20-cv-1249, 2021 WL 3771877, at *6 (N.D.N.Y. Aug. 25, 2021).[3]

---

[3] This case is pending on appeal before our Court. *Local Union 97 v. Niagara Mohawk*, No. 21-2443.

In that case, Local Union 97 filed a motion to compel arbitration of a grievance alleging that defendant Niagara Mohawk Power Corp. ("Niagara Mohawk") violated the CBA by subjecting retirees to a greater out-of-pocket maximum spend for health insurance benefits compared to active employees. *Id.* at *1. Similar to this case, Niagara Mohawk argued that the issue was not arbitrable under the CBA because the union does not represent retirees. There, the district court first determined that Local Union 97 had standing to bring the dispute because it bargained to have this dispute settled by an arbitrator in the CBA. *Id.* at *3. Next, the district court considered the language of the arbitration clause which is identical to the one here: "[t]he arbitration clause applies '[s]hould Local Union 97, IBEW claim that a dispute or difference has arisen between the Company and Local Union 97, IBEW as to the meaning, application or operation of any provision of this Agreement.'" *Id.* at *5 (alteration in original). The district court held that the arbitration clause is broad in light of the "expansiveness" of the clause's language. *Id.*

Numerous district courts in our Circuit have interpreted similar clauses as being broad. *See Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020) ("Phrases like 'any claim or controversy arising out of or relating to this

19

agreement' or 'all differences arising between the parties to this agreement as to interpretation, application or performance' are classic examples of broad clauses."); *Keyes v. Ayco Co., L.P.*, No. 17-cv-955, 2018 WL 6674292, at *7 (N.D.N.Y. Dec. 19, 2018) (finding a broad arbitration clause where "the parties mutually agreed that they 'shall' arbitrate 'any dispute, controversy or claim between the Partner and the Firm . . . relating to or arising out of Partner's employment with the firm or otherwise concerning any rights, obligations or other aspects' of her employment" (alteration in original) (emphasis omitted)); *Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc.*, No. 13-cv-7741, 2015 WL 4935116, at *5 (S.D.N.Y. Aug. 18, 2015) ("The operative text here—embracing 'any and all . . . disputes . . . arising out of or relating to'—makes this a quintessentially broad arbitration clause." (alterations in original)).

Indeed, the language of the arbitration clause permits Local Union 97 to arbitrate whenever the union *merely claims* there is a dispute or difference over any provision of the CBA. App'x at 52 ("Should [Local Union 97] claim that a dispute or difference has arisen between [NRG] and [Local Union 97] as to the meaning, application or operation of any provision of this agreement . . ."). The district court concluded, and NRG argues, that this arbitration clause does not

20

cover the dispute over the Life Insurance Provision because retirees are not "employees" under the CBA. *See Local Union 97*, 561 F. Supp. 3d at 329 ("The dispute before the court relates to the Pre-2019 Retirees' life insurance benefits."); Appellee's Br. at 10 ("The life insurance benefits provision in the 2019-23 CBA applies only to 'employees'—a term defined in Article VI as 'an employee on the active payroll who is not classed as probationary.'"). But this argument goes to the merits of the dispute and concerns the interpretation of the CBA itself. Whether Local Union 97 has a meritorious claim for relief or not is irrelevant, here all that matters is whether Local Union 97 claims a dispute has arisen between the parties relating to a provision of the CBA. Local Union 97 clearly claims there is a dispute over the meaning of the CBA as it applies to retiree life insurance benefits and that is enough, under the broad arbitration clause, to invoke the presumption of arbitrability.

We "interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *Kelly*, 933 F.3d at 179. Here, ordinary principles of contract law require us to hold the parties to the strict language of the arbitration clause

21

which demands arbitration whenever Local Union 97 claims there is a dispute or difference over any provisions.

Moreover, NRG fails to provide any contrary evidence of a purpose to exclude retirees from arbitration, and indeed, NRG provides no evidence that the parties did not intend to send contractual disputes to arbitration. NRG argues only that retirees are not employees under the CBA. But this argument regarding the definition of employees under the CBA again goes to the interpretation of the CBA–an issue reserved exclusively for the arbitrator.

Without passing any judgment on the merits of the dispute, we conclude the claim here is arbitrable, "even if it appears to the court to be frivolous." *Coca-Cola*, 39 F.3d at 410. Indeed, if we held doubts about the scope of the arbitration clause, we are still bound to resolve them "in favor of coverage." *United Steelworkers of Am.*, 363 U.S. at 583. Therefore, the district court erred in concluding that the presumption of arbitrability did not apply. Because the presumption applies and NRG fails to overcome it, we reverse the district court's decision.

## B. The Parties' Dispute Is Arbitrable Under the Prior CBAs and the 2003 MOA

The district court also incorrectly concluded that the dispute is not arbitrable under either the prior CBAs or the 2003 MOA. *See Local Union 970*, 561 F. Supp. 3d at 332, 333. The district court found that the grievance could not have arisen under any of the prior CBAs because there is no language in them indicating that the Pre-2019 Retirees would receive lifetime life insurance benefits. *Id.* at 333.

"A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205-06.

Here, Local Union 97 argues that NRG's termination of the "grandfathered" retiree life insurance benefits is an action taken after expiration of the prior CBAs that infringes upon a right to an accrued or vested benefit or otherwise survives the expiration of the agreement. *See Newspaper Guild*, 645 F.3d

23

at 530. NRG responds that to demonstrate a lifetime right has vested, a plaintiff "must identify specific written language that promises lifetime benefits." *Kelly*, 933 F.3d at 180. And Local Union 97 counters that there is specific written language promising lifetime benefits in the 2003 MOA: "Current employees will be grand fathered as to their participation in life insurance Plan A or Plan B at retirement." App'x at 83; *see also* App'x at 9 ¶ 16. Local Union 97 further argues the 2003 MOA supplemented the CBAs and is thus arbitrable under them, while NRG argues the 2003 MOA is not incorporated by reference and therefore, even if the 2003 MOA contained language promising lifetime benefits, it would not apply here.

To resolve this dispute, we must first decide whether the 2003 MOA is a supplemental agreement before considering whether there is specific written language that promises lifetime benefits.

1. The 2003 MOA is a Supplemental Agreement

Local Union 97 argues that the 2003 MOA supplemented the CBAs and is arbitrable under them. NRG argues that any disputes arising out of the 2003 MOA are not subject to arbitration because they are not incorporated by reference. NRG also argues that the 2003 MOA does not contain an arbitration

24

clause and therefore the presumption in favor of arbitrability does not apply here. The district court held that the 2003 MOA was not incorporated by reference and does not supplement the Prior CBAs because the Life Insurance Provision in the 2019-2023 CBA does not affect the life insurance benefits of the Pre-2019 Retirees. *Local Union 97*, 561 F. Supp. 3d at 332.

The district court and NRG's arguments regarding incorporation by reference miss the mark. Here, we are solely focused on the issue of whether Local Union 97's claims are arbitrable or not. Under our precedents regarding collateral agreements pursuant to a broad arbitration clause, whether the collateral agreement "was made, what it specified, whether it was breached" and whether breach of the agreement "gives rise to a remedy . . . are all matters for the arbitrators." *Coca-Cola*, 39 F.3d at 411.

In *Coca-Cola*, the union, in addition to the claims covered above, argued that Coca-Cola had pledged, in a side agreement, to obtain product in the open market on an interim basis, thereby providing the route salesman with an opportunity to earn commissions and bonuses. *Id.* We held that pursuant to the broad arbitration clause in the collective bargaining agreement, any dispute regarding the making of the side agreement was simply a matter for the

25

arbitrator. *Id.* As discussed above, the arbitration clause here is particularly broad. Therefore, any dispute claimed by Local Union 97, such as claims relating to side agreements, is arbitrable unless there is "strong evidence" the parties did not intend to cover the asserted dispute.

NRG argues that the fact that the 2003 MOA does not contain a separate arbitration clause constitutes such "evidence." Not so. In *Coca-Cola*, we permitted a claim under a side agreement to proceed to arbitration where the main collective bargaining agreement had a broad arbitration clause. *Id.* And in *Louis Dreyfus*, we stated that the "presumption of arbitrability" associated with a broad arbitration clause requires claims under a collateral agreement to "implicate [] issues of contract construction or the parties' rights and obligations under it." 252 F.3d at 228-29. There, we held that because the side agreements clearly implicated two clauses of the main agreement, the collateral agreements were "within the scope of the broad arbitration clause." *Id.* at 229.

Here, the 2003 MOA addresses the subject of retiree benefits and was executed in connection with the parties' negotiation of the 2003-2007 CBA. That CBA, and indeed the remaining CBAs until 2019, all contained a Supplemental Understandings section that stated: "All Memorandums of Agreement between

26

the Company and the Local Union were continued with the understanding that there may be requirements for modification due to the recommendations of the agreed upon Subcommittees." App'x at 166.

The district court concluded that the rights and obligations of the parties are not implicated by the 2003 MOA because both parties acknowledge the 2019-2023 CBA does not affect the Pre-2019 Retirees' life insurance benefits referenced in the 2003 MOA. *Local Union 97*, 561 F. Supp. 3d at 328. This statement by the district court is perplexing at best, because NRG argues that the 2019-2023 CBA *does* affect the Pre-2019 Retirees' life insurance benefits: "NRG ultimately notified the Pre-2019 Retirees that, effective January 1, 2021, their life insurance benefits would also be changed to a lump sum of $10,000." *Id.* at 326. Putting aside the district court's confusing language, we agree with Local Union 97 that the 2003 MOA was executed in connection with the parties' negotiation of what eventually became the 2003-2007 CBA, and, therefore, the 2003 MOA is an arbitrable side agreement.

2. Local Union 97's Argument that the Life Insurance Benefit Vested is

Plausible

Local Union 97 argues that because the 2003 MOA is a supplemental agreement to the Prior CBAs and the 2003 MOA promises "grandfathered" life insurance benefits for retirees, it is arbitrable under the broad arbitration provisions of the collective bargaining agreements in effect from 2003 to 2019. NRG responds that even if the parties incorporated the 2003 MOA into the 2003-2019 CBAs, the "2003 MOA cannot be reasonably interpreted to create a promise to vest lifetime life insurance benefits." Appellee's Br. at 16. We agree with Local Union 97.

The 2003 MOA states that "[c]urrent employees will be grand fathered as to their participation in life insurance Plan A or Plan B at retirement." App'x at 83. NRG argues that the 2003 MOA's use of the word grandfathered is ambiguous and could have different meanings. It is true that other than the word "grandfathered" there is no specific durational language indicating that the life insurance benefit vests for life. *See Kelly*, 933 F.3d at 180 ("For example, contractual language stating that retirees' life insurance benefits will remain at a stated level 'for the remainder of their lives' can reasonably be interpreted to

28

'creat[e] a promise to vest lifetime life insurance benefits.'" (quoting *Devlin v.*

*Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (alteration in

original)). Here, the argument in favor of arbitrability rests on the use of the

word "grandfathered" and the fact that the benefit conferred is life insurance

which only goes into effect at the end of the retiree's lifetime.

However, this is enough evidence for Local Union 97 to get to arbitration.

"In this Circuit, to reach a trier of fact, an employee does not have to 'point to

unambiguous language to support a claim. It is enough to point to written

language capable of reasonably being interpreted as creating a promise on the

part of the employer to vest the recipient's benefits." *Devlin*, 274 F.3d at 83

(alterations and italics omitted).

NRG's arguments regarding the interpretation of "grandfathered" go to

the merits of the dispute. Local Union 97 acknowledges it may not succeed on

the merits, Appellant's Br. at 22 n.5, but that we need not determine the merits to

find that the grievance is arbitrable. That is correct. For our purposes, we solely

need to determine whether Local Union 97 has raised an arguable claim that the

benefit was intended to be provided for life, and if so, "the presumptions

favoring arbitrability must be negated expressly or by clear implication." *Nolde*, 430 U.S. at 255.

The district court did not adopt this approach, concluding instead that it was necessary to determine whether the Pre-2019 Retirees have a vested lifetime interest to "reach a conclusion as to whether they may seek arbitration under the *Litton* test." *Local Union 97*, 561 F. Supp. 3d at 332 n11. This was error. We are only concerned with whether this matter is arbitrable. We do not express any views as to the merits of Local Union 97's life insurance benefits grievance; we decide only that the parties' dispute is arbitrable under the 2003 MOA and the Prior CBAs based on Local Union 97 identifying "written language capable of reasonably being interpreted as creating a promise on the part of the employer to vest the recipient's benefits." *Devlin*, 274 F.3d at 83 (alterations and italics omitted); *see Newspaper Guild*, 645 F.3d at 533 n.1 ("We express no view on the merits of the Guild's dues-checkoff grievance. We decide only that the parties' dispute is arbitrable pursuant to the expired CBA."); *Nolde*, 430 U.S. at 249 ("Of course, in determining the arbitrability of the dispute, the merits of the underlying claim . . . are not before us.").

**CONCLUSION**

For the reasons given above, we vacate the district court's September 21, 2021 order and remand for further proceedings consistent with this opinion.