23-7726-cv
*WCW, Inc. v. Atlantis Industries, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of December, two thousand twenty-four.

PRESENT:  AMALYA L. KEARSE,
REENA RAGGI,
MARIA ARAÚJO KAHN,
*Circuit Judges.*

_____

WCW, INC.,

*Plaintiff-Appellant*,

JOHN M. WILKINSON, M.P.L., INC.,
BELIZE, M.P.L., LTD., BAHAMAS,

*Third-Party Defendants-Appellants*,

v.                                                                      23-7726-cv

ATLANTIS INDUSTRIES, INC., KEVIN
DYEVICH,

*Defendants-Appellees.*\*

_____

FOR APPELLANTS:                          Shannon A. Bertrand, Facey Goss
                                         & McPhee, P.C., Rutland, VT.

FOR APPELLEES:                           David Bond, Law Office of David
                                         Bond, PLLC, Burlington, VT.

Appeal from the October 12, 2023 order of the United States District Court for the District of Vermont (Geoffrey W. Crawford, *J.*; Kevin J. Doyle, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order is **AFFIRMED**.

Plaintiff-Appellant WCW, Inc. ("WCW") and Third-Party Defendants-Appellants John M. Wilkinson ("Wilkinson"), M.P.L., Inc., Belize ("M.P.L. Belize"), and M.P.L., Ltd., Bahamas ("M.P.L. Bahamas") appeal from an order of the district court denying their motions to invoke and to compel arbitration, which denial was recommended by the assigned magistrate judge.

This dispute between the parties arises out of an agreement under which Defendants-Appellees Atlantis Industries, Inc. ("Atlantis Industries") and Kevin Dyevich ("Dyevich") argue they are entitled to royalties from sales of mattresses manufactured by WCW. Between 2009 and 2019, Atlantis Industries and Dyevich thrice attempted to seek

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

relief by arbitration. WCW consistently opposed arbitration and ultimately brought the present action seeking a declaration that it was not a party to the royalty agreement and an injunction barring Appellees' arbitration efforts. In response, the Appellees filed an answer, counterclaims, and a third-party complaint against the Appellants. WCW then filed a motion to dismiss the counterclaims, which the district court denied. Shortly thereafter, the Appellants moved to compel arbitration. The district court referred the parties' motions to the assigned magistrate judge, who, after a two-day evidentiary hearing, issued a report and recommendation that the motions to compel arbitration be denied. The district court agreed and adopted the report and recommendation.

The Appellants argue that the district court erred in finding, as recommended in the magistrate judge's report, that: (1) the royalty agreement is a valid and enforceable contract, and (2) they waived their right to arbitration. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

A district court's resolution of a motion to compel arbitration—including whether the "parties have contractually bound themselves to arbitrate"—is reviewed *de novo*. *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 112 (2d Cir. 2023) (internal quotation marks omitted). However, this court reviews "for clear error any factual findings on which the district court relied in reaching its decision

3

about arbitrability." *Id.* These same standards apply to review of a district court's determination that a party has waived arbitration. *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998).

## I. Validity and Enforceability of the Royalty Agreement

Prior to enforcing an agreement to arbitrate, "the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). This question is answered by looking to "state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Here, the disputed agreement identifies New Jersey law as controlling, and no party contests that New Jersey's principles of contract formation apply.

### A. Mutual Assent

Like any other contract, an agreement to arbitrate "must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp.*, 99 A.3d 306, 312–13 (N.J. 2014) (internal quotation marks omitted). Mutual assent is defined as a "meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). "[P]arties create an enforceable contract when they agree on its essential terms and manifest an intent that the terms bind them." *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004).

Despite Appellants' argument that the "written offer" was not met with "an unconditional, written acceptance," Appellants' Br. 13 (quoting *Morton v. 4 Orchard Land*

4

*Tr.*, 849 A.2d 164, 170 (N.J. 2004)), there was still a meeting of the minds as to the material terms of the royalty agreement. Although "WCW" was stricken from the agreement in several places, including a few instances where "WCW" was replaced by "MPL," only Wilkinson's initials are next to those changes. App'x 142–48. The magistrate judge credited Dyevich's testimony that he told Wilkinson (1) he did not agree to the proposed changes—except for the one Dyevich also initialed—and (2) he was reluctant to formalize any royalty agreement that did not include WCW as a party. The magistrate judge also found credible Dyevich's testimony that Wilkinson responded to that concern by stating that "he could go ahead and sign the contract in its entirety." App'x 134, 172. These findings were not clearly erroneous, and the district court did not err in concluding that these facts evince a mutual understanding that WCW would pay royalties to Atlantis Industries as set forth in the signed agreement.

Moreover, under the Restatement, "[a]n acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms." Restatement (Second) of Contracts § 61 (1981); *see also Gaglia v. Kirchner*, 721 A.2d 1028, 1032 (N.J. Super. Ct. App. Div. 1999) (citing § 61 with approval). The record supports the district court's finding that Wilkinson's acceptance was not conditioned upon assent to his proposed changes. Accordingly, we conclude that the district court did not err in finding that there was a meeting of the minds as to the terms of the royalty agreement without the handwritten

5

notations excising WCW.[1]

**B. WCW Bound By Royalty Agreement**

Appellants argue that even if Wilkinson agreed to sign the royalty agreement with WCW as a party, he was not authorized to agree on WCW's behalf and, therefore, that WCW is not bound by the royalty agreement.

An agent possesses actual authority to bind his principal "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (internal quotation marks omitted); *see also Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993) (noting that implied actual authority "may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from particular circumstances in the case" (internal quotation marks omitted)).

---

[1] Appellants also argue that the royalty agreement is invalid because Howard Lawrence—who initially signed the agreement on behalf of M.P.L. Bahamas before Dyevich and Wilkinson met to sign the agreement—"never ratified the terms of the altered document." Appellant Br. at 12. The district court correctly concluded that there was no need for Lawrence's ratification because Wilkinson's proposed modifications removing WCW from the royalty agreement did not become part of the contract. Moreover, Appellants have not argued that the definition of "affiliate" was a "material term," such that its omission would vitiate the "meeting of the minds" which had otherwise taken place between the parties, including M.P.L. Bahamas. *See Pac. All. Grp. Ltd. v. Pure Energy Corp.*, No. 02-4216, 2006 WL 166470, at *3 (D.N.J. Jan. 23, 2006) ("[T]here must be a 'meeting of the minds' for each *material* term to an agreement." (emphasis added)).

The record amply supports the district court's conclusion that Wilkinson had the actual, implied authority to execute the royalty agreement on WCW's behalf. *See Sears Mortg. Corp*, 634 A.2d at 79. Wilkinson was WCW's board chairman, a key creditor of WCW, patent licensor to WCW, and father of WCW's president. Indeed, he had a well-established financial relationship with WCW; he "continuously and independently contracted with Dyevich throughout the course of their business relationship," App'x 181; and his role with WCW involved developing market opportunities like those he pursued with Dyevich. On this record, the district court did not clearly err in crediting Dyevich's testimony or in finding that Wilkinson had the actual, implied authority to bind WCW.

Even assuming *arguendo* that Wilkinson lacked actual authority, WCW ratified the contract by paying royalties to Atlantis Industries. Ratification of a contract "requires intent to ratify plus full knowledge of all the material facts." *Thermo Contracting Corp. v. Bank of N.J.*, 354 A.2d 291, 296 (N.J. 1976). "Ratification may be express or implied, and intent may be inferred from . . . conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Id.*

Between June 2000 and March 2004, Dyevich received at least seven checks from WCW, with a combined value of nearly $500,000. Three of these checks had the notation "ROYAL" on the separation form. App'x 185. Dyevich testified that he only stopped receiving these checks when WCW became embroiled in a lawsuit and needed to

7

conserve resources to pay litigation costs.  The district court did not find credible WCW's

alternative explanation for these checks or the "ROYAL" notation, instead crediting

Dyevich's testimony that these payments constituted royalties under the agreement.  The

district court's finding that those payments were royalties was not clearly erroneous.

Furthermore, WCW's payment of nearly $500,000 of royalties over nearly four years

provides a sufficient basis to infer its intent to ratify the agreement.  As such, we conclude

that the district court did not err in determining that the royalty agreement was a valid

contract to which WCW was bound.

## II.      Waiver of Arbitration Right

In general, "[w]aiver . . . is the intentional relinquishment or abandonment of a

known right."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (internal quotation marks

omitted).  A contracting party's right to have a dispute resolved by arbitration may be

relinquished by "acting inconsistently with that right[.]"  *Id.* at 419; *accord Brown v.

Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023)

(summary order); *Billie v. Coverall N. Am. Inc.*, No. 22-718-cv, 2023 WL 2531396, at *3 n.3

(2d Cir. Mar. 15, 2023) (summary order).  Under the facts of this case, the Appellants

clearly waived their right to resolve this dispute in arbitration.[2]

---

[2] As the parties point out, the Second Circuit's test for evaluating whether a litigant has waived its right to arbitration was upended by the Supreme Court's decision in *Morgan*, which recognized that federal courts may not "invent special, arbitration-preferring procedural rules," and held, accordingly, that a party's waiver of arbitration may not be conditioned upon a showing

8

Dyevich tried three times over the course of a decade to resolve the parties' contractual dispute in arbitration. WCW initiated this action with the express purpose of enjoining the latest arbitration proceeding. Its complaint requested not only "a judgment permanently restraining Atlantis Industries . . . from prosecuting any claims against WCW . . . in arbitration," but also "a temporary, preliminary and permanent injunction . . . . restraining Atlantis Industries . . . from seeking to prosecute claims against WCW . . . in arbitration." App'x 17. WCW then sought to dismiss Appellees' counterclaims— effectively seeking to dispose of the parties' dispute in a judicial forum. While that motion was pending, none of the Appellants invoked their arbitration rights, even in response to the district court's explicit request for briefing regarding arbitrability. It was only after the district court denied WCW's motion to dismiss that the Appellants moved to compel arbitration after more than a year of litigation. "[A] litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 161 (2d Cir. 2010). But that is exactly what the Appellants attempted here.

---

of prejudice to the opposing party. *Morgan*, 596 U.S. at 418–19. Since *Morgan*, this court has not clarified in a precedential opinion the test for evaluating waiver of arbitration, leading district courts in the Second Circuit to differ in their description of their assessments and in their reliance on our prior caselaw. *Compare, e.g.*, *Boustead Secs., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 451 n.7 (S.D.N.Y. 2023) (noting that, in absence of a clear Second Circuit test, it was applying the "preexisting waiver analysis, specific to arbitration, but without taking into account prejudice"), *with Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022) (evaluating arbitral waiver in the same way it would "in the context of any other kind of contract"). Despite these differences, post-*Morgan*, district courts in this Circuit focus squarely on the conduct of the party in question to determine whether it acted inconsistently with its arbitration right, as we do here.

On this record, we have no trouble concluding that the Appellants acted wholly inconsistently with their right to arbitrate such that they knowingly relinquished it.  As such, we affirm the district court's order on this ground.

\*       \*       \*

We have considered the Appellants' remaining arguments and conclude that they are without merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10